The next case on calendar is Epicenter Loss Recovery versus Burford Capital, 24-721. Each side will have 15 minutes in this case. Good morning, Your Honors. May it please the Court, Ryan Baker, Waymaker LLP, on behalf of Appellant, Epicenter Loss Recovery, LLC. The District Court in this case entered an order in January of 2019 granting a 12-1 motion on jurisdiction in order to compel arbitration and send this case to the LCIA in the UK for arbitration. And considering the case, the District Court applied a standard that has been clarified by the Supreme Court and the Ninth Circuit, no longer applies, if it ever did. And I'd just like to cite a couple of the District Court's references in the standard that it actually articulated. There are four different instances where the District Court simply applies the wrong standard, and I think that set a foundation that just misguided the Court's entire analysis here. The Court essentially in saying, and this is at excerpts of Record 12 and 13 where the Court articulates the standard of review, as a matter of federal law, any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration. Further down at lines 23 and 24 of page 12, due regard to federal policy in favor of arbitration by resolving ambiguities as to the scope in favor of. Next page. Sorry, could I interrupt you? So you're talking a lot about what the District Court said, but isn't this an issue we would review de novo? Yes, exactly. So maybe just skip to why you think there shouldn't have been arbitration here. Yes. So, Your Honor, thank you. So although the District Court set out the standard improperly, the standard has been clarified by the Supreme Court, and it was clarified by Justice Kagan in the Morgan case. And what Justice Kagan articulated is that although for decades there has been a thumb on the scale across the country in favor of arbitration, that if it ever should have applied, does not apply today. Arbitration is a creature of contract. It should be evaluated as a matter of contract. And in this case, looking at the constellation of contracts, which have various terms going one way and the other, there's simply no basis to import the arbitration clause from one agreement into a separate agreement, which is the note, which was the basis of plaintiff's three claims in the Second Amendment complaint that was the basis of the court's dismissal. So this depends on us not thinking that the subject to language incorporated the other contract, which had the then arbitration clause with the delegation.  Yeah. So I contend that if you look at each of the three contracts, and there are three that are most relevant here, they are a forward purchase agreement. That agreement was a litigation funding agreement, basically. It was amended several times. I think there were four versions of that contract. Each one of those forward purchase contracts had an arbitration clause, and that arbitration clause applied, said choice of laws, English law. Then there's an intercreditor agreement. That was signed along with the last forward purchase agreement because what had happened in the case at that point is the parties realized now we have a tangible real estate asset that's the subject that's going to be used to settle this case as opposed to cash. Before, everything was cash, cash, cash. We have a real estate deal now, so we need to issue a note and some other documents. They redid the forward purchase agreement, and they also had an intercreditor agreement. So this is the agreement that the appellees point to that they claim governs everything here. But if you dissect the contracts and if you read the plain language without the objective, I did want to at least flag the last case that's cited where the district court is saying unless there's unmistakably clear evidence to the contrary, we're going to essentially find a waiver of the party's Article III rights and ship the case off to arbitration. I contend that this court here, that's what it did. It was looking for a way to find arbitration, and that's what it was able to do. But it doesn't really matter what the district court was doing because you have to convince us that the subject, too, doesn't incorporate the arbitration clause in the delegation provision. So that's right. So let's look at the contracts. So the note, as we articulated, the note is the basis of the three claims at issue here. There was first the declaratory relief claim and the Second Amendment complaint. Then there was a breach of the implied covenant, and then finally there was an interference claim that was against Burford only, which Burford is not a signatory to any of these agreements. Looking at the note, the note was issued, and again I go back to what I was trying to say before about the inter-creditor agreement. The purpose of that was that the lawyer, the law firm of Simpson Thatcher, needed to get paid. So once there was a real estate asset, there was this whole batch of this constellation of new contracts that were articulated and signed, each of which has competing provisions, frankly, and dueling provisions. And while the appellees here want to say, even if I assume that they're going to argue, even if you look at this under the new standard, which Justice Kagan has made clear and this court has adopted in the Michaels case, I think it's – I'll come back to that. So your client's position is that the current dispute is not subject to arbitration. Is that right? That's correct, Your Honor. Mike, we contend that if the court, which this court will do a de novo analysis looking at the contracts, there are provisions going every which way among the three contracts that are at issue. And while the appellees want to point to the inter-creditor agreement, because there is language on the note that says it is subject to any conflict between this instrument and the inter-creditor agreement, the inter-creditor agreement shall control. That's there. I don't – we can't avoid that. However, I want to point out to the court that that same language is also in the forward purchase agreement. The forward purchase agreement, which that contract is – exerts a record, the language that I'm going to point to, it starts at ER 292, but at ER 298, Section 5.2, which talks about payments to the law firm of Simpson Thatcher, which was the whole point of the inter-creditor agreement, to make sure they got paid if there was a satisfaction of the note. Okay, you all understand you're signing this note. Simpson Thatcher is not a party to the note. But everybody agrees that if there's a payment here, okay, the lawyers also have to get paid pursuant to the inter-creditor agreement. That was the point. That was the point of that agreement. So now the appellees are here saying, no, no, no, every technical difference, any difference at all, you've got to defer to the inter-creditor agreement. Okay, counsel, I'm looking at the note. So the note is really what's at issue here, right? Yes. And it's the introductory, it's the heading to this note. So explain to me why those last two sentences don't bind you to the remedies in the inter-creditor agreement. Well, the second to last sentence, which is each holder – and I assume that I'm looking at the same thing as your Honor – each holder of this instrument, by its acceptance hereof, irrevocably agrees to be bound by the provisions of the inter-creditor agreement. Well, the holder of the note is the party that's going to get paid. The holder of the note in this case is defined as Ganymede. So Ganymede, if it gets the money, it has to acknowledge the inter-creditor agreement and pay the lawyers. That's the point of that sentence. The next sentence, in the event of any conflict between this instrument and the inter-creditor agreement, the inter-creditor agreement shall control. That's a really – I mean, I don't understand that argument at all. So, Your Honor, let me – this is what I was trying to explain. Unfortunately, if I had a whiteboard, I would use it. It's my fault, of course. But the Section 5, so if to the extent that we're arguing, that, Apuleius, you're arguing, that sentence that says the inter-creditor agreement prevails if there's a conflict, what does that mean? So I want to point out to the Court – Okay, but we don't even have to get to the question of the conflict, do we? Because each holder of the instrument agrees to be bound by the provisions of the agreement. Well, Your Honor – That includes an arbitration clause. Well, it does. But in this contract, that inter-creditor agreement does include an arbitration clause. That's correct. So the question is whether or not this language requires the application of every single conflict. And going through the – if you compare the note to the inter-creditor agreement to the forward purchase agreement, and what I was trying to get out earlier, is the forward purchase agreement also has the same language. This agreement is subject to the terms and conditions of the – I think this is ER 298 that you were pointing us to before, but the first sentence of 5.2 is just this agreement is subject to the terms and conditions of the inter-creditor agreement, just period. Right, but then it's – It seems like that sends us to the arbitration clause. I'm really struggling with how it doesn't – Okay, Your Honor, I'm making a bit of a subtle point here, but if you'll just humor me for a moment. And the reason this matters, I think, is Your Honor, in the Monster Energy dissent, identifies a lot of issues that happen in arbitration. I understand Your Honor didn't agree with the majority there to vacate the award, but arbitration can be a perilous endeavor, arbitration overseas especially. And while they want to argue that, well, especially international arbitration still applies, it's even more perilous. And this is – I'm not getting into the merits of what happened in the arbitration because that's not before the court, but this is an example of why this matters. And so going back to 5.2 – My dissent was definitely about why this matters, but once you agree, you agree. And so we still have to get to whether you agreed, which it seems like you did. Well, Your Honor, I don't think we did. We agreed to the terms of the note that are in the note. And the note, of course, does refer to court jury trials, so it's not just for injunctive relief. It doesn't limit anything to collections. It doesn't say that. So if you just look at the four corners of the note, obviously there's language in there that at least renders an ambiguity. And the court needed to go into a deeper analysis, and Your Honors are doing that here. So if I can finish the 5.2, I'm going back to ER 298. In the event of any conflict, the intercreditor agreement shall control, and it actually identifies without limitation with respect to relative priority of the payments due to STB and purchaser. So the point, again, of the conflict was to make sure the money went the right place. And the other piece I want to point out is there is an arbitration clause in the forward purchase agreement. These are sophisticated parties. If they wanted an arbitration clause, they knew how to do it. There are all other agreements but one have an arbitration clause. Importantly, the arbitration clause in the forward purchase agreement, which is at ER 301, provides for the English choice of law. Well, the intercreditor agreement says Arizona law. So there's a conflict. So I contend that the ministerial differences between these documents aren't what that provision meant. That that provision, the legend at the top of the note, is directed towards the payment and the distribution of assets. It's not to override every technical term. There are differences among the agreements in the way the payments flow and the interest rates that apply and who gets paid first. In some of those instances, if it's a flow of money, so it would have to go, obviously, to the intercreditor agreement. But these other more ministerial decisions are not necessarily governed. You don't just get to bootstrap into that arbitration clause because, again, you have to look at the whole constellation of contracts. Your Honors, I wanted to reserve three minutes for rebuttal. Thank you. Thank you. May it please the Court, I'm Michael Houston of Perkins Coie for the defendants, Burford Capital and Ganymede. This case, as Mr. Baker said, involves two sophisticated entities who were experienced in both commercial contracting and with the legal system. The parties agreed through a series of closely integrated agreements entered on the same day, all of which expressly cross-reference each other, that any disputes arising between them would be resolved through arbitration in London and that the London Tribunal would determine any disputes about the scope of arbitration. So Epicenter agreed that under the plain terms of the Convention, as incorporated by the Federal Arbitration Act, it would seek judicial review of any decision of the London Arbitral Tribunal in a court in England, the seat where the arbitration occurred. When Epicenter filed this dispute in Arizona in 2018, the District Court looked at these agreements and properly sent the case to arbitration in accord with the parties' contracts. That arbitration occurred in London over a 12-day period. The panel of three arbitrators, including the arbitrator that was selected by Epicenter, unanimously concluded that none of Epicenter's claims in this lawsuit had any merit. So say we agree with you that it was proper to send the case to arbitration. I'm not sure the District Court was right to dismiss the case at this point, though, because I don't see that you ever asked for recognition or enforcement of the award. Am I right about that? You are right, Your Honor. We have not yet sought enforcement of the award. Of course, we wouldn't normally seek that in the Federal District Court at this point. We have not done that yet. So why was it proper to dismiss the case? Because the case was brought by Epicenter. Epicenter was seeking resolution of its substantive claims brought under Arizona law. The District Court correctly recognized that those claims have now been determined by the London Arbitral Tribunal. And at this point, the only thing that remains is either Epicenter needs to object to the arbitration if it can plausibly do so, but if it can do so— I thought that only happens once you seek enforcement and recognition. And that would be their sort of defense to that. And at that point, they could say, well, there was some problem under the convention or whatever. But we haven't had that yet. So we don't have an enforced arbitration judgment that would be an estoppel yet. So I'm confused how the case is over entirely. I mean, it seems like you'll get there, but you haven't done it yet. Two points, Your Honor, two points. The first is Epicenter's substantive claims, those are over. If Epicenter believes— Well, but only if there's estoppel, right? I mean, it was sent to arbitration, but there are some rare circumstances where an arbitration award isn't enforced. And no one's litigated that yet. Yes, you're right, Your Honor, but those are a defense. So that would arise in a proceeding that we initiated seeking enforcement. So if and when we seek enforcement of the arbitrable award in the United States, at that point, Epicenter will come in with its defenses if it has been— I agree. I agree. But until you've done that and you win, which it seems from what we know now, I don't see why you wouldn't, but until you do that and win, you don't have a judgment that estops their current state law claims. Well, I think they are not—the point is they are not entitled to relief from the federal district court, the relief that they pleaded in their complaint. They can't get it because the claims have been decided in England and only an English court is capable of reviewing. But the Supreme Court has said that the proper thing to do pending arbitration, whilst a case goes to arbitration, is to keep it in abeyance, not dismiss it. That's right. And until you get enforcement, aren't we still in that situation that, like, essentially the case is out in arbitration? No, because the arbitration has been resolved. And so now that we have come back to the federal district court, what we're saying is there's no possibility that Epicenter can get relief on the claims that it pleaded in the complaint. It can't do it. Only an English court would be capable of reviewing the substantive determinations of the arbitral. Why not move to enforce the award? Well, we may, Your Honor. We just haven't done so at this point. Why? Well, I think that's a business judgment that my client is considering, but we haven't yet taken that step. But so do you have any case that says that you can dismiss before you have taken that step? Yes, I think so. I think so, Your Honor. I mean, I think that what we are doing in this lawsuit is very similar to what the Fifth Circuit did in Gulf Petro, what the Second Circuit did in Esso Exploration, what the Eleventh Circuit did. Okay. The Supreme Court sort of recently said that the proper thing to do is to hold the case in abeyance, though, instead of dismissing. That's right, Your Honor. The Supreme Court in that case was talking about pending the conduct of the arbitration proceeding. We've had the arbitration proceeding. It's over. There's a final judgment. Okay, so do you have any case since the Supreme Court said the proper thing to do while the case is in arbitration is to keep it in abeyance that says without enforcing the award, we still count it as done? Not since the Supreme Court's decision there, Your Honor. I don't. But I guess I just want to say I don't know what sense it makes to just leave the case open on the district court's docket forever. I mean, our point was to say, our point is simply, the reason why we moved to dismiss is simply to say the substantive claims that Epicenter pleaded in our complaint, it can never get relief on those. And that's just true because the only litigation, if there's going to be any more litigation between these parties Isn't that in tension with the Supreme Court? I mean, once there is an enforcement of an arbitration clause and you're sending the case to arbitration, if that's done properly, you're never going to be able to have relief in state court if it's supposed to be an arbitration. But yet, we're supposed to keep it open in state court until everything is resolved. Until the arbitration is resolved, Your Honor. But the arbitration has been resolved. And the point of the Supreme Court's decision in that case, I think, was to say that you might have a situation where you go to the Epicenter makes an argument, very much like the one that it might want, that it tries to make in its brief in this case, which is actually the dispute that I have is outside the scope of the arbitration. That's an issue that is delegated to the arbitrator to resolve. But the arbitrator might agree. Now of course, I just want to be clear, Epicenter actually argued precisely the opposite to the real London Tribunal in this case. It acknowledged and conceded the tribunal's jurisdiction. But the point of the Supreme Court's decision was to recognize that although a case gets sent to arbitration, it might get sent back. And in that circumstance, we want to leave the district court docket open for the purpose of resolving the claims when they come back. But here, that's not going to happen because the arbitration is completed and the only court in the world that's capable of supervising the judgment entered by the London Arbitrable Tribunal is a court in the United Kingdom. I understand your opponent's argument to be that the present dispute is not subject to arbitration, right? That's their argument. That is their argument, Your Honor. And that's an argument that it sounds in scope. What Epicenter is arguing, I think fair, charitably construed, is yes, although we agreed to arbitration in the intercreditor agreement and in the forward purchase agreement, the specific kind of claim that we want to raise here is outside the scope of that arbitration agreement. That's the type of argument that this court, the last time it heard the appeal in this case, said that we need to leave the case open so that Epicenter can take that argument to the London Tribunal that is charged by the party's contract with deciding it. But when we actually got to the London Arbitrable Tribunal, Epicenter decided precisely the opposite. They said we are abandoning any attempt to contest this tribunal's jurisdiction and we are acknowledging that this tribunal has authority to resolve all of the claims. So I think Your Honor is correctly characterizing the argument that they want to make in their brief in this court, but it's just utterly inconsistent with the express argument that they made to the tribunal. And I don't think under principles of estoppel that they can tell the tribunal you have authority to resolve these claims. And in reliance, the parties expended millions of dollars on that arbitration and then come back to this court and say actually we've changed our mind. We no longer think that the tribunal had any authority to adjudicate these claims. Just like you're suggesting that they're arguing that the district court in this circumstance had the authority to modify the award. No, Your Honor. I'm sorry. If I suggested that, I don't mean to suggest it at all. The district court, now that we have an arbitration that is fully complete, that took place in England, under the terms of the convention, Fully complete but unconfirmed. Unconfirmed in the United States. That's what we would do, right? We would take a foreign arbitrable decision. We would take it to the United States if we want and attempt to convert it into a U.S. court judgment. We have not initiated the sort of offensive proceedings to do that. Did the district court, did Judge Humatua have that authority? Could she have confirmed the award? So I believe we could. I'm not sure whether you would ask for it, but did she possess the authority to confirm the award? Not independently of a request from us to do so, Your Honor. I don't think so. We, as the party who holds the arbitration decision in our favor, it's up to us at that point to take that arbitration decision to a court in the United States and seek affirmatively request from the court the relief of entry confirmation of that award. And if we did so, Epicenter would then have only very, very limited defenses to that, as the court is aware, that are spelled out in Article V of the convention, none of which on their face apply here. Let's just hypothetically say that one of them did apply and they managed to show that under the convention this award shouldn't be approved, whatever the word is, recognized. So then what happens then? Well, at that point, so that would be a separate legal proceeding. We would initiate, we'd come to court and say we want confirmation of our award. They would come in and say, no, one of these defenses in Article V applies. I take it that it's a hypothetical. I mean, I don't even think they've arguably. I understand. We're not going to say you can see this. Just hypothetically they find one of these rare things under the convention and they just don't have to show that it happens. Right. In that situation, Your Honor, we, as the holder of the award, would not be entitled to a judgment in the United States confirming that award. We couldn't take it to the sheriff and foreclose on it or something like that. And so we've got this arbitral award, but we can't in that situation convert it into a judgment from a United States court. But all of this is going to happen later in a separate legal proceeding. So why does it show, though, that their current claims, which there is federal, sorry, I think we're properly in federal court, right? I guess it's diversity, whatever the basis was. So why does it mean that they have to be gone from federal court? Because they will never be entitled to relief on the claims that they pleaded in their complaint. And the answer, the reason why that is the case, is because those claims were sent and were decided in an arbitrable tribunal in London. And under the convention, only an English court is capable at that point of reviewing whether the decision of the London tribunal adjudicating those claims. So there's just no more, there's never going to be a situation in which the U.S. federal district court has authority to decide the substantive claims that were originally preceded or pleaded in the plaintiff's complaint. Those claims, per the terms of the convention and the FAA, have been finally resolved. They've been resolved adversely. Okay, but in the hypothetical, that judgment, at least for U.S. purposes, gets vacated under one of these rare things under the convention. Respectfully, Your Honor, I don't think that's right. That's not what would happen. What would happen is, in that situation, the hypothetical where there's a valid defense to enforcement, we can't enforce the arbitration award. We can't convert that into a judgment, a money judgment in our favor that we would seek to foreclose on or something, the way any other litigant who wins a judgment would. But it doesn't mean that Epicenter's original claims spring back to life. Indeed, the convention presides precisely the opposite. The whole point of the convention is to say that where you've had a completed foreign arbitration proceeding, that's final with respect to the claims that were adjudicated by the panel, and only a court in the seat, quote, which is obviously England, is capable of adjudicating Epicenter's entitlement on the claims. And they had 28 days to do so and didn't do so. That is correct, Your Honor. So as a real-life matter, it's too late. The only thing they could do is come to the United States when you seek to confirm it. So until you seek to confirm it in the United States, assuming their assets are all here, which I assume is obvious, until you seek to confirm it, then nobody's going to pay anything. You don't have a judgment to be confirmed in the United States that is enforceable. Once you decide to do that, then they can come in and raise whatever claims under the convention to the district court. That's exactly right, Judge Bybee, except I think I would say just they can raise whatever defenses they might have. Right, under the convention. Under the convention. The Article 5. Yes, exactly right, which, as the court is aware, are extremely limited. And that's because we're a secondary jurisdiction. U.K. is primary. Precisely right, Your Honor. I do want to spend just a moment, if I might. I mean, I know the court already explored the way in which the agreements interact with each other, but I just think it's useful to explain for a moment. It is not just the fact that the very first line of the note, even before you come to the promissory note itself, the agreement puts up in bold language that this instrument and the rights and obligations evidenced hereby are subject to that certain subordination and intercreditor agreement that contains the obvious integration clause. Excuse me, the arbitration agreement. And I think under decisions like progressive casualty and standard bent glass, this really couldn't be more clear as an attempt by sophisticated commercial parties to say that the note is subject to the provisions of the intercreditor agreement, one of which is arbitration. But there's more, and that's the point I just want to emphasize for one more second. In the intercreditor agreement, it expressly references at 3 ER 316 that that means the senior debt documents that are discussed in the intercreditor agreement include the note. And then I know my friend was spent. Can I just ask one more time about this dismissal thing? Because I think you're asking us to decide something novel. So I think we have diversity of jurisdiction, and then also Chapter 2 of the FAA gives us federal court jurisdiction because it's under the convention. So do either – is there any rule in the FAA that says once there's a decision in the foreign arbitration that now the federal district court has no jurisdiction anymore? Yes, I do think there is. But it's by negative implication, Your Honor. So what the article – excuse me, the FAA and the convention both speak in terms of what it is that the court in a secondary jurisdiction, as Judge Bybee pointed out we are, has the power to do. And the only thing that a court in this situation has the power to do is enforce the award. In other words, respond to our request to enforce it. And why is that jurisdiction instead of merits? Sure. I actually don't think it matters, Your Honor. It does matter in the sense that, I mean, we have to decide if we're affirming a jurisdictional dismissal, right? I don't think so, Your Honor, because I think the court – we certainly have a dismissal. The judgment of the district court was that the action is – I have a follow-up because I think the district court actually misspoke here. I don't think this is a 12B1. I think this is a 12B6. But it sort of gets you to the same place. It does, and it does, and that's exactly right. And I think it's worth just spending a moment to clarify that because I don't want this court to enter a judgment that the Supreme Court would say, oh, well, it's actually not jurisdictional, and that makes a difference. We're not trying to get wrapped around the axle on that or have this court get a foot fault on that. I think the point – the difference between a jurisdictional dismissal and a dismissal on the merits really only matters if there's a defense along the lines of forfeiture under the Supreme Court's precedence. But we've obviously asserted it. We've obviously moved for dismissal. So this was the point of the footnote in our brief. Courts have said that the right thing to do in this situation is dismiss for lack of jurisdiction. Judge Friedland, I totally take your point that under the Supreme Court's precedence about when something is and is not jurisdictional, there's like some reason for doubt about whether that's right. That's why I think the right answer from this court is to simply say that the case was properly dismissed. And I think it would be proper for the court to affirm because the plaintiffs cannot state a claim for relief on the merits even if the court had subject matter jurisdiction. So clearly dismissal is mandatory because the federal court does not have the power to enter the relief that is requested. That seems more plausible to me. So I don't see how there's lacking jurisdiction, but maybe on the merits we could affirm dismissal. And we're just fine with that, Your Honor. I think if the court wants to say – And you think we can just clarify then that there is jurisdiction, but it needs to be dismissed on the merits. We can do that ourselves at this point. Yes, I think that's just fine. If the court wants to say the claims that Epicenter has asserted under Arizona law have to be dismissed because they are not entitled to the relief requested and it should be a dismissal under 12b-6 or effectively a summary judgment, that's just fine. And I think the court can do that not while preserving, sort of leaving open in order to, I think, avoid a circuit split. I don't think we can leave open whether we have jurisdiction and affirm on the merits. So that part of your footnote I don't agree with. So you have to convince us we do have jurisdiction and can dismiss on the merits, I think. Because otherwise we're back in the jurisdiction. This court clearly has appellate jurisdiction, Your Honor. There's no question about that. But what I think you have appellate jurisdiction to do in reviewing the district court's judgment of dismissal is say that judgment is affirmed. And it can be affirmed, obviously, on any ground supported by the record. So I don't think the court needs to decide whether in this situation where you have a completed foreign arbitration decision, the dismissal of the district court has to be for lack of jurisdiction or on the merits. Where we have properly and timely asserted the dismissal, it gets you to exactly the same place, as I think Judge Bybee was saying. We've taken you over your time. Thank you for the helpful argument. Let's hear rebuttal, please. Thank you, Your Honors. I understand Your Honors are focused on what sounds like the ultimate dismissal of the case. I want to take the court back to 2019 because, again, the appellant here contends that under the fresh look which is required by Morgan v. Sundance and Armstrong v. Michaels, that was the case I wasn't remembering, the full name of an analysis of plain language of the contracts shows at least that there is a significant ambiguity. So in the first instance, there's a question as to whether the case should have been sent to arbitration. There's even a greater question as to whether or not the delegation of the arbitrability of the claims should have been shipped over to the U.K. We don't even need to get to the delegation issue if we just think you have an arbitration clause that sends it to arbitration, right? Well, I think you do because it's a two-step process. Well, if we're in the delegation clause, it's maybe two-step. But if we just think your arbitration clause that says it has to be arbitrated in London is part of this agreement by incorporation, we don't need the delegation clause. Yes, if you incorporate the arbitration clause, which does have an LCIA reference, then correct. However, I contend that under the case law, it has to be a clear and unmistakable assent to allow the delegation of the decision of whether... If we use the delegation clause as the root. Well, so what I'm contending here is that it's not clear and unmistakable because it's a bank shot. It's a double bank shot. You've got one contract, the note, that the plaintiff sued under, and then they're incorporating... The court's incorporating something from the LCIA, which I contend shouldn't be incorporated because the constellation of contracts goes every which way, and it's unclear. It's not clear and unmistakable, so it's not proper to import that. Even if it is proper, there's still a question... Can I ask, if you lose this... I know you don't want to lose this, but if we conclude that you agreed to arbitrate and so these claims need to be resolved in arbitration and that was proper, what about this dismissal? Do you care if we dismiss at that point even? I honestly don't think we care. I mean, to be honest, I want to refer to the Council's argument about waiver. There was no waiver, and the reason we don't care is because we got sent over to the UK, had to pay a million dollars to even get in the door. A non-party, Mr. Gray, who's the principal of Epicenter, had to pay a million dollars or guarantee a million to get in the door, and he's being sued in Arizona court for that right now. And so the cost of that, and obviously the amount that's at issue here, the underlying award, $10 million plus, the cost of all of that has depleted him, and so there's no... Really, unless this case can come back and the court can take it at its root and say this should have never been sent off to arbitration, there's no more fight in Epicenter loss recovery at this point. It's been fleeced by the LCIA, it's been... And so you don't care if it's dismissed with prejudice, without prejudice, for jurisdiction, for merits, whatever, you don't care? Well, I wouldn't say that it's that broad, Your Honor. I do think that there... You know, the court obviously will perform a careful analysis there. However, at the point if the court finds that it was properly sent to arbitration, that's really the thrust of the argument here, that we're asking the court to reconsider that decision in 2019. Not to get in... Not to deal with the convention, not to deal with what happened afterwards, or even, frankly, the ultimate dismissal. And I will say one thing, just to contradict or to counter my colleague's argument on waiver. At the time that Epicenter, or the predecessors to Epicenter, consented to arbitrate, filed their demand, the court that's here dismissed the case. So literally, the predecessors to Epicenter were up the creek without a paddle. They had nowhere else to go. So what were they to do? To continue to go over to LCIA and say, no, we don't agree you have jurisdiction, we're going to continue to do what? Just we're not going to participate? They had nowhere else to go. The court had ordered them to arbitrate, and to the extent there's a further argument that they had agreed, that the appellants here had agreed to the delegation of claims, that was not clear and unmistakable. There was nothing voluntary there. So I contend that the court should revisit, based on the new standard articulated by the Supreme Court in this district, this circuit, and reevaluate the initial sending, the initial finding that there was a waiver of Article III rights, because those are important. I think I need to cut you off. Okay, thank you. You have your argument. Thank you. Oh, sorry, we actually have a question. I'm sorry.  So your client's case rises or falls on whether your description of the dispute is subject to arbitration, correct? Yes. You are not contending that there's some dispute between the parties not covered by arbitration? Well, I guess let me just try to take that apart so I don't misspeak. Sure, take your time. So we contend, first of all, that none of the claims should have been sent to arbitration. The case should not have been sent to arbitration in the first instance. Gotcha on that. None of the claims. But then there are further arguments that fall beneath that. There's delegability. There's also Burford as a party that wasn't a party to any of these contracts. There was a claim for interference against Burford, and that interference claim, by the way, presumes that Burford is a non-party to the contracts. That's the whole basis of interference. You have to be a non-privileged non-party to interfere with a contract or a future expectation. So to the extent that there are issues that are a little bit more nuanced in terms of whether or not the Cole case is subject to arbitrability, I would just articulate those points. Once you've completed the arbitration, isn't the question of arbitrability one that's reserved to the English courts? Well, no, Your Honor, because this court, we contend this court still has jurisdiction to consider the January 19 order of the court. Otherwise, participating, it's not unlike any other trial. And the fact that it was abroad really is of no moment. Your claim is that even if it, even that it shouldn't have gone to arbitration, but if it had gone to arbitration, there were certain issues that the district court should have retained or said, I'm not referring these to arbitration. These cannot be arbitrated. Well, I guess what I contend, Your Honor, is that this court has jurisdiction to revisit the district court's decision in January of 2019 to find in the first instance that an arbitration agreement had been reached that applied.  That's the first question, whether it goes to arbitration. There's a second question, which is does the question of arbitrability of all of the claims between the parties, is that reserved to the arbitrators in England? And that's the second question. Are you making any claim under that? I thought this was Judge Hawkins' question. Yes. So we argue that to the extent that the whole case... Which claims are subject to arbitration? Which claims are not subject to arbitration? Well, again, our first contention is that none of the claims were subject to arbitration. We understand that argument. Beneath that, if you dissect the claims, I think the most obvious claim that should not have been ever sent to arbitration is the claim for interference against Burford. Okay. Now, is there anything in the agreements that would suggest that some claims are not arbitrable? Because as I read the arbitration provision in the agreement, it looks like the questions of arbitrability are reserved under the London rules to the arbitration. Our contention is there had to be a clear and unmistakable consent to ship off the arbitrability question to London. And there was not such consent because we are dealing with documents that are incorporated by reference in a confusing fashion when compared with the other documents doesn't necessarily clarify what the subject-to-conflict language in the legend means. And so, therefore, it was improper. The district court should have conducted the analysis of delegability to the arbitrator on each specific claim. Okay. Okay. All right. Any further questions? I'm good. Thank you, both sides, for the helpful arguments. Thank you. Thank you, Your Honor. This case is submitted.
judges: HAWKINS, BYBEE, FRIEDLAND